UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

TAATHA MARTIN

                               Plaintiff,

      v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                              Defendant.

**DECISION
and
ORDER

17-CV-00267-LGF
(consent)**

───────────────────────────────────────

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
                             Attorneys for Plaintiff
                             AMY C. CHAMBERS, of Counsel
                             6000 Bailey Avenue
                             Suite 1A
                             Amherst, New York 14226

                             JAMES P. KENNEDY, JR.
                             UNITED STATES ATTORNEY
                             Attorney for Defendant
                             AMY C. CHAMBERS
                             Assistant United States Attorney, of Counsel
                             Federal Centre
                             138 Delaware Avenue
                             Buffalo, New York 14202, and

                             STEPHEN P. CONTE
                             Regional Chief Counsel
                             United States Social Security Administration
                             Office of the General Counsel, of Counsel
                             26 Federal Plaza
                             Room 3904
                             New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, in accordance with a Standing Order (Dkt. No. 15), consented to proceed before the undersigned. (Dkt. No. 15-1). The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed by Plaintiff on September 21, 2017 (Dkt. No. 11), and by Defendant on November 21, 2017 (Dkt. No. 13). For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

## BACKGROUND and FACTS

Plaintiff Taatha Martin ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act, and Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Act, together ("disability benefits"). Plaintiff, born on January 23, 1971 (R. 134),[2] alleges that she became disabled on April 25, 2009, when she stopped working as a result of injuries to her spine and right knee suffered in a car accident. (R. 37-8).

---

[2] "R" references are to the page numbers of administrative record electronically filed in this case for the Court's review. (Dkt. No. 7).

Plaintiff's application for disability benefits was initially denied by Defendant on February 4, 2014 (R. 62), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Joan Deans ("Judge Deans" or "the ALJ") on July 12, 2016, in Buffalo, New York, where Plaintiff, represented by Emily Janicz, Esq. ("Janicz") appeared and testified. (R. 4-50). Vocational expert ("VE") Millie Drost also appeared and testified. (R. 50-60). The ALJ's decision denying Plaintiff's claim was rendered on August 18, 2016. (R. 14-26). Plaintiff requested review by the Appeals Council, and on January 30, 2017, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on March 28, 2017, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On September 21, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 11) ("Plaintiff's Memorandum"). Defendant filed, on November 21, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 13) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on December 12, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 14). Oral argument was deemed unnecessary.

Facts pertinent to the issues raised in Plaintiff's Memorandum include Plaintiff's visit on December 3, 2009, to Graham Huckell, M.D. ("Dr. Huckell"), who performed right knee orthoscopic surgery, partial meniscectomy (removal of meniscal knee cartilage), synovectomy (removal of tissue surrounding knee) anterior compartment and lateral compartment surgery on Plaintiff. (R. 243). During a follow-up examination of

Plaintiff's knees on January 28, 2010, Dr. Huckell noted that Plaintiff reported a decrease in her knee pain, that Plaintiff was recovering as expected and should return to her normal activity as tolerated. (R. 243-45).

On July 18, 2012, Plaintiff underwent a magnetic resonance imagining ("MRI") scan on Plaintiff's right thumb, where, upon review of the MRI Lawrence Rand, M.D. ("Dr. Rand"), opined that Plaintiff had a probable tear of the tendon of her thumb. (R. 389).

On November 19, 2013, Plaintiff sought treatment from Donald J. Nenno, M.D. ("Dr. Nenno"), after falling and re-injuring her right knee and thumb on February 12, 2013. (R. 331).

On January 24, 2014, Hongbiao Liu, M.D. ("Dr. Liu"), completed a consultative physical examination on Plaintiff and evaluated Plaintiff with a mild to moderate limitation to prolonged walking, bending, and kneeling, and intact hand and finger dexterity. (R. 417-18). Plaintiff reported activities of daily living that include cooking, cleaning, watching television, listening to the radio, reading, and socializing with friends. (R. 416).

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

4

## A. Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the actual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[4] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional

---

[4] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

6

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

**B.**     **<u>Substantial Gainful Activity</u>**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. §

404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since April 25, 2009, Plaintiff's alleged onset date of disability. (R. 16). Plaintiff does not contest this finding.

C.     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities." If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. 20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

8

In this case, the ALJ determined that Plaintiff had the severe impairments of degenerative joint disease of the knees and obesity, and that Plaintiff's gastroesophageal reflux disease ("GERD"), sciatica and depression were not severe. (R. 17-19). Plaintiff maintains that the ALJ's step-two findings are erroneous as the ALJ failed to consider Plaintiff's anxiety, depression, panic disorder and sciatica as severe impairments. Plaintiff's Memorandum at 17-18. In this case, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments, osteoarthritis, and sciatica were not severe, as Plaintiff's mere diagnosis of sciatica was insufficient to establish a severe impairment under step two, and Plaintiff's testimony that she was able to use utensils and write with her right hand (R. 39-40), supports Dr. Liu's finding (R. 417) that Plaintiff exhibited normal hand dexterity. Additionally, no error results from the ALJ's finding that no limitations result from Plaintiff's depression and anxiety, as the ALJ included consideration of such impairments in subsequent steps of the ALJ's disability findings. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (no error where ALJ proceeds to include non-severe impairments throughout remaining steps of sequential disability analysis and considered the combination of impairments and the combined effect of "all symptoms" in the ALJ's disability review analysis). Plaintiff's motion on this issue is therefore without merit.

Plaintiff's further contention that the ALJ improperly analyzed Plaintiff's mental impairments using the special technique under 20 C.F.R. § 404.1520a,[5] by failing to

---

[5] 20 C.F.R. § 404.1520a requires that ALJs evaluate whether a disability claimant has a medically determinable impairment and to rate the resulting functional limitations in areas that include activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation (paragraph "B" findings). *See Kohler v. Astrue,* 546 F.3d 260, 266 (2d Cir. 2008).

discuss evidence from Dr. Napoli and RPA-C Fells ("Nurse Practitioner Fells"), a nurse practitioner in Dr. Vazquez's office, Plaintiff's Memorandum at 19-20, is also without merit. The ALJ's finding that Plaintiff's mental impairments result in only mild limitations to Plaintiff's ability to function under 20 C.F.R. § 404.1520a (R. 18-19), is supported by Plaintiff's testimony that her activities of daily living include cooking, cleaning, watching television, listening to the radio, reading, and socializing with friends (R. 416), and Dr. Vazquez's opinion that Plaintiff's mild depression was improved by medication with no side effects, with no indication that Plaintiff suffered from suicidal thoughts, crying spells, fatigue, forgetfulness, difficulty concentrating, lack of interest in pleasurable activities or stress. (R. 700).

Plaintiff's contention, Plaintiff's Memorandum at 19-20, that the ALJ was required to consider Plaintiff's GAF score is also misplaced. The GAF scale, promulgated by the American Psychiatric Association, is no longer included in the most recent addition of the *Diagnostic and Statistical Manual of Mental Disorders,* and an S.S.A. issued bulletin effective on July 22, 2013, and applicable here,[6] limits the use of GAF scores noting that "[t]he problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation" such that GAF scores should be used only as opinion evidence based on the details of the clinician's evaluation of the score rather than simply a numerical range without the benefit of such opinion. *See Mainella v. Colvin*, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014). In this case there is no such

---

[6] Changes in S.S.A. regulations and corresponding policies typically apply only to cases decided after the enactment of the change. *See Ely v. Colvin*, 2016 WL 315980, at*4 n.2 (W.D.N.Y. Jan. 27, 2016) citing *Holloman v. Colvin*, 2014 WL 5090030, at *7 (E.D. Pa. Oct. 9, 2014).

opinion interpreting Plaintiff's GAF score and the ALJ supported the ALJ's finding that Plaintiff's mental impairment was not severe with Dr. Vazquez's opinion that Plaintiff's mild depression was treated with medication and records from Plaintiff's treatment with the Monsignor Carr Clinic. (R. 18). No other clinical evidence in the record supports Plaintiff's GAF score of 55 (suggesting that Plaintiff's depression resulted in moderate limitations to Plaintiff's functioning) and the ALJ was therefore not required to include that score in the ALJ's step two analysis. As discussed, Discussion, *supra,* at 9-10, substantial evidence in the record supports that Plaintiff exhibited only mild symptoms from Plaintiff's mental impairments, and Plaintiff's motion on this issue is therefore without merit.

D.  **Listing of Impairments**

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Dysfunction of a Major Joint), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the spine), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00 ("§ 12.00") (Mental Disorders). (R. 27). Plaintiff contends that the ALJ's step three[7] findings are erroneous as the ALJ erred in not separately considering Plaintiff's anxiety, panic disorder and depression under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders), and § 12.06 ("§ 12.06") (Anxiety Related Disorders), and failed to evaluate Plaintiff's mental disorders using the special technique

---

[7] Plaintiff's Memorandum, at 19, mistakenly identifies the ALJ's findings at step three as step two errors.

11

defined under 20 C.F.R. § 404.1520a (functional limitations defined under paragraph "B"). Plaintiff's Memorandum at 19. In order to be deemed disabled under either § 12.04 or § 12.06 of the listed impairments, a claimant must meet the criteria for medical findings under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, paragraph "A" under § 12.04 or § 12.06, and provide evidence to support that the claimant's mental impairment(s) result(ed) in a "marked" restriction to two impairment-related functional areas listed under paragraph "B" of §§ 12.04 or 12.06 (*i.e.*, the ability to engage in activities of daily living, maintain social functioning, concentration, persistence or pace, and no repeated episodes of decompensation). *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.00A. In this case, upon evaluating Plaintiff's mental impairments using the criteria under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00 ("§ 12.00") (Mental Disorders), the ALJ determined (R. 18-19), that Plaintiff's mental impairments resulted in only mild limitations to Plaintiff's ability to complete activities of daily living, maintain social functioning, concentration, persistence and pace, and that Plaintiff experienced no episodes of decompensation of extended duration based on evidence from Plaintiff's testimony (R. 35, 206, 208-211), Plaintiff's visit to Monsignor Carr Clinic on November 12, 2014 (R. 423), and Dr. Vazquez's treatment notes (R. 700-04). As discussed, Discussion, *supra*, at 9-10, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments result in only mild functional limitations defined under paragraph "B" (R. 18), and a corollary finding that Plaintiff does not meet paragraph "B" criteria under either § 12.04 or § 12.06 of the listed impairments. Plaintiff's motion on this issue is thus without merit.

### E. Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work. (R. 20). Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ failed to obtain physical and psychiatric functional assessments of Plaintiff, and evidence related to an assault that Plaintiff suffered during 2014. Plaintiff's Memorandum at 23, 28. Plaintiff's

argument that the ALJ erred in not questioning the Plaintiff about her alleged assault in Spring 2014 is without merit. At the hearing, the ALJ asked Plaintiff's counsel whether an opportunity to review the record had been afforded and to confirm that the record was complete. (R. 33). No objection was proffered by Plaintiff's counsel (R. 33), and nothing in the record indicates that Plaintiff's assault was reported to Plaintiff's treatment providers or resulted in any additional limitations to Plaintiff's ability to function. Plaintiff's visits to Catholic Health from January 16, 2014, until November 24, 2014 (the time period during which Plaintiff's alleged assault occurred), indicate that Plaintiff received treatment for unspecified osteoarthritis, hypertension, gastroesophageal reflux disease ("GERD"), tobacco use, sciatica, and underwent regular mammography screening and received regular vaccinations. (R. 585-86). On March 18, 2014, Nurse Practitioner Fells noted that Plaintiff's reported accident history included a car accident and a knee injury from falling in glass (R. 589), and a detailed description of Plaintiff's office visits from March 18, 2014 until April 24, 2015 (the period during which Plaintiff's alleged assault occurred), indicate that Plaintiff received treatment for GERD, atopic dermatitis, hypertension, degenerative joint disease and osteoarthritis with no mention of treatment resulting from Plaintiff's assault. (R. 583). Plaintiff provides no records to support that she received medical treatment for assault or explain how records regarding the assault would affect the ALJ's residual capacity assessment of Plaintiff. *Reices-Colon v. Astrue*, 523 Fed App'x. 796, 799 (2d Cir. 2013) (no error in development of the record where claimant does not identify a missing record or provide an explanation as to how the missing record would affect her case). As Defendant maintains, Defendant's Memorandum at 20, the ALJ's determination not to obtain a residual functional capacity assessment from

Plaintiff's treating physician does not render the record so incomplete as to require remand. *See Tankisi v. Commissioner of Social Security*, 521 Fed. App'x. 29, 33 (2d Cir. 2013) (no remand where ALJ did not request treating physician opinion but the record contained sufficient evidence for ALJ to assess the claimant's residual functional capacity). Plaintiff's motion on this issue is accordingly denied.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 11) is DENIED; Defendant's motion (Doc. No. 13) is GRANTED. The Clerk of Court is ordered to close the file.

So Ordered.

> */s/ Leslie G. Foschio*
>
> LESLIE G. FOSCHIO
> UNITED STATES MAGISTRATE JUDGE

DATED:     July 17, 2018
               Buffalo, New York